UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

AMERICAN CENTER FOR CIVIL
JUSTICE, RELIGIOUS LIBERTY &
TOLERANCE, INC.,

      Appellant,

  v.

WILLIAM S. KATCHEN, ESQ.,

      Appellee.

Civ. Action No. 19-18115 (FLW)

**MEMORANDUM ORDER**

  **THIS MATTER** having been opened to the Court on the filing of an appeal by American Center for Civil Justice, Religious Liberty & Tolerance, Inc. ("ACCJ-RTL") pursuant to 28 U.S.C. §158(a)(1) and Rule 8001 *et seq*. of the Federal Rules of Bankruptcy Procedure [*see* ECF No. 6]; it appearing that appellee, William S. Katchen, Esq. ("Mr. Katchen"), opposes ACCJ-RTL's appeal [*see* ECF No. 7], and that ACCJ-RTL has filed a reply in response to Mr. Katchen's opposition[1] [*see* ECF No. 8]; the Court, having considered the parties' submissions, makes the following findings:

**Background and Procedural History**

1.  In June 2018, the Law Offices of William S. Katchen, LLC commenced legal representation of ACCJ-RLT in a Chapter 11 bankruptcy proceeding that was filed by the American Center for Civil Justice, Inc. ("ACCJ"), an affiliate of ACCJ-RLT. [*See* Appellant's Br. at 1, ECF No. 6.] Mr. Katchen represented ACCJ-RTL in connection with this matter from June 2018 through August 2018. *See id.*

---

[1]  On January 13, 2020, Mr. Katchen filed a sur-reply, although he did not seek leave of court.

1

2. On August 9, 2018, ACCJ-RLT retained Mr. Katchen to represent ACCJ-RLT in connection with its own Chapter 11 bankruptcy proceedings. [*See* Appellant's Br. at 2, ECF No. 6; Chapter 11 Bankr. Pet., Bankr. Dkt. 18-26095, ECF No. 1.]

3. The letter of engagement between ACCJ-RLT and Mr. Katchen specified that Mr. Katchen's hourly rate would be $895, subject to a 20% discount because of ACCJ-RLT's non-profit status. [*See* Appellant's Br. at 2, ECF No. 6.]

4. On September 10, 2018, the Bankruptcy Court approved the retention of Mr. Katchen as counsel for ACCJ-RTL. [See Appellant's Br. at 2, ECF No. 6; Appellee's Br. at 5, ECF No. 7; *see also* Order for Authority to Employ Katchen Firm as Counsel for Debtor, Bankr. Dkt. 18-26095, ECF No. 42.]

5. On September 18, 2018, Mr. Katchen filed an application for compensation with the Bankruptcy Court. [Appellant's Br. at 2, ECF No. 6; *see also* Application for Compensation, Bankr. Dkt. 18-26095, ECF No. 46.] The hearing on the application was originally scheduled for November 6, 2018; however, due to a medical event suffered by Mr. Katchen, the hearing was adjourned until December 4, 2018. [*See* Appellant's Br. at 3, ECF No. 6.]

6. On December 4, 2018, the Bankruptcy Court entered an order granting Mr. Katchen's application for compensation in the amount of $102,380.80, with an additional $240.37 for expenses ("December 4, 2018 Order"). [*Id.*; *see also* Order Granting Application for Compensation, Bankr. Dkt. 18-26095, ECF No. 76.]

7. ACCJ-RTL had its first opportunity to review Mr. Katchen's billing statements only after the Bankruptcy Court entered the December 4, 2018 Order. [*See* Appellant's Br. at 3, ECF No. 6.] ACCJ-RTL took issue with several of Mr. Katchen's billing entries. [*Id.; see also*

2

       Ex. C to Appellee's Br., ECF No. 7-4]. The parties attempted to resolve those issues to no avail. [*See* Appellant's Br. at 3, ECF No. 6.]

8. On December 26, 2018, Mr. Katchen petitioned the Bankruptcy Court for an order enforcing the December 4, 2018 fee award, and relieving him as counsel. [*See* Appellant's Br. at 3, ECF No. 6; Motion to Enforce, Bankr. Dkt. 18-26095, ECF No. 83; *see also* Request for Leave to File Formal Motion to Withdraw as Counsel for the Debtor, Bankr. Dkt. 18-26095, ECF No. 85] On January 15, 2019, ACCJ-RTL responded with a cross-motion to vacate the December 4, 2018 Order on the basis that Mr. Katchen had failed to properly effect service of the application for compensation. [*See* Appellant's Br. at 3, ECF No. 6; Cross-Motion, Bankr. Dkt. 18-26095, ECF No. 98.]

9. On February 1, 2019, Mr. Katchen filed a Substitution of Attorney with the Bankruptcy Court, terminating his representation and adding Collins, Vella & Casello, LLC as counsel for ACCJ-RTL. [*See* Substitution of Attorney, Bankr. Dkt. 18-26095, ECF No. 118.]

10. On February 4, 2019, the Bankruptcy Court entered a consent order disposing both of Mr. Katchen's December 26, 2018 petition for a final order and of ACCJ-RTL's January 15, 2019 cross-motion to vacate ( "February 4, 2019 Consent Order"). [*See* Appellant's Br. at 3, ECF No. 6; Consent Order, Bankr. Dkt. 18-26095, ECF No. 120.] In the February 4, 2019 Consent Order, the Bankruptcy Court ordered as follows:

    a. The Bankruptcy Court's earlier December 4, 2018 Order was deemed to be an "interim order subject to review as a part of any final application for compensation filed by" Mr. Katchen. [Consent Order ¶ 1, Bankr. Dkt. 18-26095, ECF No. 120.]

b. ACCJ-RLT was ordered within 7 days to pay Mr. Katchen an amount equal to 80% of the fees allowed in the December 4, 2018 Order and 100% of allowed expenses. [*Id.* at ¶ 2.]

c. Collins, Vella & Casello, LLC was ordered to provide Mr. Katchen with a Substitution of Attorney, and Mr. Katchen was ordered to execute and return said Substitution of Attorney to Collins, Vella & Casello, LLC, for filing with the Bankruptcy Court within 7 days.[2] [*Id.* at ¶ 3.]

d. The Second Application for Compensation filed by Mr. Katchen on December 26, 2018 was ordered withdrawn. [*Id.* at ¶ 4.]

e. Mr. Katchen was ordered to file his final application for compensation within 30 days of the filing of the Substitution of Attorney. [*Id.* at ¶ 5.]

f. At the time of the hearing on Mr. Katchen's final application for compensation, the Bankruptcy Court would review Mr. Katchen's earlier interim application for compensation. [*Id.*] In that regard, the Bankruptcy Court reserved the right to order disgorgement of fees that had previously been awarded to Mr. Katchen in the December 4, 2018 Order. [*Id.*]

g. Finally, Mr. Katchen was ordered to properly serve his final application for compensation on all parties, pursuant to the Federal Rules of Bankruptcy Procedure and the Court's Local Rules. [*Id.* at ¶ 6.]

---

[2] As noted in paragraph 9, the Substitution of Attorney was filed on February 1, 2019, prior to entry of the Consent Order.

11. On March 3, 2019, a period of 30 days elapsed from the filing of the Substitution of Attorney, and, therefore, the deadline in the February 4, 2019 Consent Order for Mr. Katchen to file his final application for compensation had expired.

12. Months later, on July 26, 2019, Mr. Katchen filed, without leave, a Final Application for Compensation with the Bankruptcy Court ("Final Application"). [*See* Appellant's Br. at 3, ECF No. 6; Final Application for Compensation, Bankr. Dkt. 18-26095, ECF No. 163.] The Application was submitted 145 days after the deadline set forth in the February 4, 2019 Consent Order.

13. In the Final Application, Mr. Katchen requested additional fees in the amount of $73,318.40 plus expenses of $265.10, incurred during the time periods September 11, 2018 through October 5, 2018, and October 15, 2018 through January 30, 2019, respectively. [*See* Appellant's Br. at 4, ECF No. 6; Exs. 2 and 3 to Final Application for Compensation, Bankr. Dkt. 18-26095, ECF Nos. 163-3, 163-4.]

14. On August 13, 2019, ACCJ-RTL filed an objection to the Final Application. ACCJ-RTL also made objections to the fee award that was previously granted by the Bankruptcy Court in the December 4, 2018 Order. [*See* Appellant's Br. at 4, ECF No. 6; Appellee's Br. at 5, ECF No. 7; Objection to Professional Fees, Bankr. Dkt. 18-26095, ECF No. 168.]

15. On September 3, 2019, the Bankruptcy Court conducted a hearing on the Final Application. [*See* Appellant's Br. at 4, ECF No. 6; Sept. 3, 2019 Hr'g Tr. Bankr. Dkt. 18-26095, ECF No. 184]. On September 6, 2019, the Bankruptcy Court entered an Order Granting Final Allowances (the "Final Order"). [*See* Appellant's Br. at 4, ECF No. 6; Appellee's Br. at 5, ECF No. 7; Order Granting Application for Compensation, Bankr. Dkt. 18-26095, ECF No. 174.] In the Final Order, the Bankruptcy Court reduced Mr. Katchen's interim fee

award (which was previously granted in the December 4, 2018 Order) from $102,380.80 to $99,695.80 to reflect excessive travel time billed. [*See* Order Granting Application for Compensation, Bankr. Dkt. 18-26095, ECF No. 174.] Additionally, the Bankruptcy Court made reductions to amounts sought by Mr. Katchen in the Final Application, from $73,318.40 to $64,404.20. [*Id.*] In sum, the Bankruptcy Court awarded fees of $164,100.00, plus expenses of $505.47, to Mr. Katchen. [*Id.*]

16. On September 18, 2019, ACCJ-RTL filed a notice of appeal of the Final Order, and the instant appeal ensued. [*See* Appellant's Br at 4, ECF No. 6; Bankr. Dkt. 18-26095, ECF No. 176.] On appeal, ACCJ-RTL raises two arguments. First, ACCJ-RTL argues that the Bankruptcy Court erred as a matter of law in awarding fees to Mr. Katchen in connection with his late-filed final fee application. [*See* Appellant's Br. at 1, ECF No. 6.] Second, ACCJ-RTL argues that the Bankruptcy Court erred as a matter of law in finding that Mr. Katchen's fees were reasonable and represented actual and necessary services rendered on behalf of ACCJ-RTL's estate. [*Id.*]

## Legal Standard

17. This Court has jurisdiction pursuant to 28 U.S.C. §158(a)(1) and Federal Rule of Bankruptcy Procedure 8001(a).[3]

---

[3]   Mr. Katchen's argument that ACCJ-RTL is judicially estopped from bringing this appeal is without merit. A party may appeal as of right from a bankruptcy court's final order. 28 U.S.C. §158(a)(1). Orders for final compensation should be considered final orders for purposes of appeal. *See In re Delta Petroleum (P.R.)*, 193 B.R. 99, 105 (D.P.R. 1996). It is apparent from the history of the Katchen Firm's representation of ACCJ-RTL, specifically that the representation ceased as of the filing of the Substitution of Attorney on February 1, 2019, and the language of the September 6, 2019 Order Granting Final Allowances, that the Order was intended to conclusively determine the entire section 330 compensation to be paid to the Katchen Firm. *See In re Delta*, 193 B.R. at 105 (referencing practical test employed by numerous courts to determine whether fee award may be considered final and, therefore, appealable.) Therefore, the order is final and appealable to this Court as a matter of right. Mr. Katchen's reliance on *Oneida Motor Freight, Inc.* is misplaced. *See Oneida Motor Freight Inc. v. United Jersey Bank*, 848 F.3d 414, 419 (3d Cir. 1988) (finding

*(Footnote continued on next page.)*

18. On appeal, this Court reviews both the award of attorneys' fees and the finding of excusable neglect for abuse of discretion, "which occurs if the court's ruling was founded on an error of law or clearly erroneous view of the facts or misapplication of the law to the facts." *In re Gioioso*, 979 F.2d 956, 959 (3d Cir. 1992) (citing *Marco v. Accent Pub. Co.*, 969 F.2d 1547, 1548 (3d Cir. 1992).

19. On appeal, a bankruptcy court's conclusions of law are reviewed *de novo*. *See Brown v. Pennsylvania State Emps. Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988).

20. A finding of fact is entitled to more deference and can only be overturned as clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the deliberate and firm conclusion that a mistake has been committed." *United States v. United States Gypsum*, 333 U.S. 364, 395 (1948).

21. When a party presents mixed questions of law and fact, the reviewing court applies the appropriate standard to each component of the challenge. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989). This Court finds that the instant appeal presents mixed questions of law and fact.

22. The highly deferential standard afforded to a lower court's finding of facts is partly dependent on the quality of the record below. *See In re Ross*, 858 F.3d 779, 786 (3d Cir. 2017) (noting that "when reviewing for abuse of discretion, appellant courts grant less deference to court decisions that are unaccompanied by reasoning") (citing *United States v. Bailey*, 840 F.3d 99, 117 (3d Cir. 2016). Further, there is no affirmative duty placed on

---

judicial estoppel because the debtor's litigation position stood in clear opposition to a position previously asserted). ACCJ-RTL has taken no such inconsistent position. Similarly, Mr. Katchen's request for attorney's fees and costs for this appeal also lacks merit.

the reviewing court to scour the record for reasons to affirm. *Id.* Consequently, the reviewing court has the authority to vacate and remand a decision of a lower court if the lower court does not provide sufficient reasoning to support its decision. *Id.; see also In re Gioioso*, 979 F.2d at 964 (Roth, J., concurring) (finding it to be essential for a lower court to include discussion of its analysis "to insure that its discretion has not been abused").

### Discussion

### Late Filed Final Fee Application

23. The Federal Rules of Bankruptcy Procedure set forth the procedure for requesting an extension of time to any filing deadlines. Specifically, Rule 9006(b)(1) states, in relevant part: "[W]hen an act is required or allowed to be done at or within a specified . . . by order of court, the court for cause shown may at any time in its discretion [time]. . . on motion made after the expiration of the specified period permit the act to be done *where the failure to act was the result of excusable neglect*." Fed. R. Bankr. P. 9006(b)(1) (emphasis added).

24. A bankruptcy court's determination of what kind of neglect will be deemed "excusable" is an equitable one, taking into account "all relevant circumstances." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1992). Specifically, the bankruptcy court must consider the following factors: (1) "the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Id.*; *see also Lauro v. Shearer (In re Lauro)*, 2007 U.S. Dist. LEXIS 85637 (W.D. Pa. 2007) (finding *Pioneer* applicable to issue of whether debtors could claim excusable neglect in connection with their late-filed certification of

completion of post-petition credit counseling); *Larson v. Bayer (In re Bayer)*, 527 B.R. 202 (Bankr. E.D. Pa. 2015) (acknowledging that "*Pioneer* informs the application of excusable neglect in every court rule in which that term is used").

25. Weighing the *Pioneer* factors is an integral part of applying the excusable neglect standard, and reviewing courts have remanded cases back to the bankruptcy court for failure to consider these factors. *See Chemtron Corp. v. Jones*, 72 F.3d 341, 350 (3d Cir. 1995) (finding that bankruptcy court "failed to adequately consider the totality of the circumstances presented" in connection with a late-filed claim, specifically failing to make factual findings related to *Pioneer* factors and remanding to bankruptcy court for a more "comprehensive and thorough determination" of the circumstances supporting defense of "excusable neglect"); *see also Lauro*, 2007 U.S. Dist. LEXIS 85637 (holding that bankruptcy court abused its discretion by failing to provide an adequate explanation as to how it weighed *Pioneer* factors in determining whether or not the debtors had met their burden to prove excusable neglect).

26. With regard to the instant matter, because Mr. Katchen failed to file a motion to enlarge the time to file his final fee application, he failed to comply with Rule 9006(b). While case law suggests that a bankruptcy court has discretion to excuse this procedural defect (*see Agate Holdings v. Ceresota Mill Ltd. Pshp. (In re Ceresota Mill Ltd. Pshp.)*, 211 B.R. 315, 318 (Bankr. App Panel 8th Cir. 1997); *see also DeRamus v. Bank of Pratville*, 180 B.R. 665, 669 (M.D. Ala. 1995)), Mr. Katchen points to nothing in the record to support the Bankruptcy Court's exercise of its discretion to do so in this case; the record lacks any reasoning as to excusable neglect.

27. What little rationale Mr. Katchen has offered for his 145 delay was laid out in his response to ACCJ-RTL's objection to his final fee application. [Response to Objection to Professional Fees at 3, Bankr. Dkt. 18-26095, ECF No. 171.] Reviewing Mr. Katchen's paltry explanation for his delay in light of the *Pioneer* factors leaves substantial question as to whether the delay truly qualified as excusable neglect. As to the first factor, Mr. Katchen posits, in a conclusory fashion, that "no prejudice for the delay was suffered by the Debtor's Estate." [*Id.*] However, he offers no support for this assertion. With regard to the second factor, Mr. Katchen argues that the order authorizing his retention allowed him to file an 11 U.S.C. §503(b)(4) claim against ACCJ, ACCJ-RTL's parent entity, in its Chapter 11 bankruptcy case, and that, because there is "no logical basis to distinguish between claims for substantial contribution" and for services rendered pursuant to his representation as counsel for ACCJ-RTL, he should be given the benefit of the later filing date applicable to claims filed in ACCJ's Chapter 11 case. This argument fails on its face. Mr. Katchen fails to explain how a deadline in a separate, albeit related, Chapter 11 case has any bearing on the judicial administration of ACCJ-RLT's Chapter 11 proceeding. He also fails to explain why a generally applicable provision of ACCJ's Second Modified Plan of Reorganization would trump the February 4, 2019 Consent Order, which specifically addresses Mr. Katchen's fee application.

28. As to the third and fourth factors, again, Mr. Katchen fails to include much substance regarding the reason for his delay other than "inadvertence during counsel's recovery from a stroke." [*Id.*] While this Court is certainly sympathetic to Mr. Katchen's health issues, the record in this case does not support the position that his medical recovery substantiated such a lengthy delay. Based on the record, it appears that Mr. Katchen suffered a stroke in

10

October 2018.  [Sept. 3, 2019 Hr'g Tr. 2:21-22, Bankr. Dkt. 18-26095, ECF No. 184; *see also* Objection to Professional Fees at 5, Bankr. Dkt. 18-26095, ECF No. 168.]  In the time between October 15, 2018 and late January 2019, Mr. Katchen billed approximately 14 hours on the ACCJ-RTL matter.  [Ex. 3 to Final Application for Compensation, Bankr. Dkt. 18-26095, ECF No. 163-4.]   He filed his Second Interim Application for Compensation on December 26, 2018.  [Bankr. Dkt. 18-26095, ECF No. 84.]  Additionally, he entered into a Consent Order on February 4, 2019, setting the deadline for his final fee application approximately one month later.  [Consent Order, Bankr. Dkt. 18-26095, ECF No. 120.].  As such, given that Mr. Katchen was able to perform work despite his medical condition, and consented to the time periods, Mr. Katchen has not shown this Court that he provided a factual basis to enable the Bankruptcy Court to determine that the reason for the delay was excusable and that the delay was not in bad faith.

29. Importantly, the only reference in the record to indicate that the Bankruptcy Court considered the *Pioneer* factors or otherwise applied the excusable neglect standard to Mr. Katchen's late-filed fee application was made at the September 3, 2019 hearing, when the Bankruptcy Court stated in short fashion that it did not "see any prejudice."  [Sept. 3, 2019 Hr'g Tr. 2:20, Bankr. Dkt. 18-26095, ECF No. 184.]   This lone reference provides insufficient reasoning for this Court to review on appeal.

30. Given the insufficiency of the record as to Mr. Katchen's claim of excusable neglect, and the seeming lack of details that would even allow this Court to make such a determination in the first instance, remand for further development of the record is appropriate.  *See Lieb v. Topstone Indus.*, 788 F.2d 151, 154 (3d Cir. 1986) (finding that remand to district court for articulation of reasons as to why court denied statutory counsel fees to prevailing party

11

was necessary because court could not perform its appellate function in light of an insufficient record to determine the basis on which the district court ruled.)

### Reasonableness of Fees

31. Pursuant to 11 U.S.C. § 330(a)(1), a bankruptcy court may award to an attorney, employed under section 327, "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." The rule requires the bankruptcy court to determine the amount of reasonable compensation by considering such factors as the time spent on services, the rate charged by the professional seeking fees, and whether the services were "necessary" or "beneficial at the time of the service" to the administration of the estate. 11 U.S.C. §330(a)(3); *see also In re Cengaro*, *Int'l, PLC*, 294 B.R. 571, 595 (Bankr. S.D.N.Y. 2003) (quoting *In re Ames Dep't. Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996) (stating that § 330 requires bankruptcy courts to conduct an "objective inquiry, 'based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances.'")

32. The fee applicant bears the burden of proving it has earned the fees requested and that the fees are reasonable. *Zolfo, Cooper & Co. v. Sunbeam-Oster, Co.,* 50 F.3d 253, 260 (3d Cir. 1994). The applicant must submit fee applications with sufficient detail to enable the court to reach an informed decision as to the award of fees. *In re Temple Retirement Cmty., Inc.*, 97 Bank. 333, 339 (Bankr. W.D. Tex. 1989). This obligation is also reflected in the Local Bankruptcy Rule controlling applications for compensation. *See* D.N.J. LBR 2016-1 (requiring that an application for compensation include a "narrative explaining the nature of the work performed and the results achieved . . . and any circumstances . . . the applicant

wishes to emphasize . . . [including] reasons for substantial time billed for a particular activity").

33. In reviewing the applicant's submission to determine if it has met its burden, the bankruptcy court "is obliged [to] carefully consider the documentation submitted by applicants for fees and expenses." *Zolfo*, 50 F.3d at 263. This duty to conduct an independent examination of fee applications is grounded in the "court's inherent obligation to monitor the debtor's estate and to serve the public interest." *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 841 (3d Cir. 1994).

34. A bankruptcy judge's expertise with both fee petitions and appropriate billing practices is the starting point of any inquiry, and in that respect, a bankruptcy court's discretion is entitled to appropriate deference. *Id.* at 853. That deference, however, does not obviate the bankruptcy court's obligation to undertake an independent inquiry to ensure that the authorization of fees is warranted. *See id.* (acknowledging that while the judge's experience is the starting point for any inquiry, it is certainly not the ending point). Nor does it obviate the need to enter "sufficient findings of fact and conclusions of law in the record to facilitate appellate review." *See id.* at 847.

35. In the present matter, it appears that the Bankruptcy Court may not have reviewed certain disputed time entries before entering the Final Order. [Sept. 3, 2019 Hr'g Tr. 7:1-2, Bankr. Dkt. 18-26095, ECF No. 184.] For example, during a colloquy between Mr. Katchen and the Bankruptcy Court during the September 3, 2019 hearing, the Bankruptcy Court asked Mr. Katchen about certain duplicative charges raised in ACCJ-RTL's objection. [*Id.* at 7:1-5.] Mr. Katchen responded that he billed the tasks separately, so as to "avoid lumping." [*Id.* at 7:8-11.] However, lumping was not the issue. The issue was that Mr. Katchen billed

for both a 7.8 hour deposition and a 0.5 call with the court during the same period of time. [*See* Appellant's Br. at 6, ECF No. 6 (containing excerpt from Mr. Katchen's September 6, 2018 time entry showing he attended a deposition from 10:20 a.m. to 6:00 p.m. and also prepared for, and participated in, a 3 p.m. court call.)] Accepting Mr. Katchen's explanation that he avoided "lumping" on this day was a clear error in light of the actual issue presented.

36. Additionally, Mr. Katchen was aware of the nature of at least some of ACCJ-RTL's objections prior to the filing of the Final Application. [*See* Ex. C to Appellee's Br., ECF No. 7-4.] Thus, he had every opportunity to include the reasoning and results achieved for the alleged overbilling. *See* D.N.J. LBR 2016-1. He did not take advantage of this opportunity and instead filed an anemic narrative of services rendered in support of the Final Application. [Ex. 2 to Final Application for Compensation, Bankr. Dkt. 18-26095, ECF No. 163-3.]. Several of Mr. Katchen's descriptions of the services he provided to the estate were simply lifted from the descriptions found in the "Summary of Services" cover sheet. [*See id.* at 7.] For instance, Mr. Katchen duplicated on some of the billing entries the following description directly from the "Summary of Services": "litigation other than avoidance action litigation (there should be a separate category for each major matter)," and provided no indication of what litigation he engaged in nor any reason why such litigation was necessary or beneficial to the estate. [*Id.*] One of the narrative descriptions Mr. Katchen included, "identification and review of potential assets including causes of action and non-litigation recoveries" was also directly lifted from the cover sheet; however, curiously, Mr. Katchen did not indicate on the cover sheet that he performed any work fitting this category. [*Id.* at 3, 7.]

14

37. Plainly, Mr. Katchen's detailed time entries add little clarity as to the nature of the services rendered on behalf of the estate or why such services were reasonable and necessary or how they benefitted the estate. For instance, Mr. Katchen's billing statements included dozens of entries for research with reference to a case name, but with no indication of what issue was actually being investigated or how the research benefitted the estate. [*See* Exs. 1 and 2 to Final Application for Compensation, Bankr. Dkt. 18-26095, ECF Nos. 163-2, 163-3.] Additionally, given ACCJ-RTL's allegations of excessive time billed for the Plan and Disclosure Statement, and particularly in light of the claims that the Plan was roundly criticized by creditors and was "unconfirmable" [*see* Appellant's Br. at 12-13, ECF No. 6], the Bankruptcy Court should have independently determined if the 36.2 hours Mr. Katchen billed to prepare the Plan and Disclosure Statement was reasonable. [*See* Final Application for Compensation, Bankr. Dkt. 18-26095, ECF Nos. 163, 163-2.]

38. The Bankruptcy Court had the duty, even absent an objection, to question the nature of Mr. Katchen's services, the reasonableness of those services, and the benefit enjoyed by the estate from those services. *See Busy Beaver*, 19 F.3d at 841. The record did not reveal that the Bankruptcy Court performed its independent duty to review the reasonableness of Mr. Katchen's fee application. Without sufficient findings of fact and conclusions of law in the record, I am unable to engage in meaningful appellate review. *See id.* at 847. For these reasons, remand to the Bankruptcy Court is necessary so that the Bankruptcy Court may review Mr. Katchen's Interim and Final Fee Applications to determine if Mr. Katchen met his burden of proving that the fees requested were reasonable.

39. Finally, both the transcript from the September 3, 2019 hearing and the Final Order reference that the Bankruptcy Court would deduct for travel time billed in excess of one-

15

half Mr. Katchen's standard rate of $895 an hour.  [*See* Sept. 3, 2019 Hr'g Tr. at 9:19-21, Bankr. Dkt. 18-26095, ECF No. 184; Order Granting Application for Compensation, Bankr. Dkt. 18-26095, ECF No. 174.]  In its brief filed in the instant appeal, ACCJ-RTL renews its objection to excessive travel time billed, noting that "it appears the Court sought to exclude this time from the Order Awarding Compensation."  [Appellant's Br. at 11, ECF No. 6.]  ACCJ-RLT's confusion is warranted, as this Court also has encountered difficultly in determining what amounts were deducted, and arrived at different numbers when applying the Bankruptcy Court's calculus.  Upon remand, the Bankruptcy Court is directed to clarify this particular exclusion.

**IT IS** on this 20th day of July, 2020,

**ORDERED** that Mr. Katchen's Final Application for Compensation is remanded to the Bankruptcy Court for further proceedings consistent with this Order..

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge